FILED

MAY 2 3 2020

TIMOTHY M. O'BRIEN CLERK
By_____CAA_____Deputy

**UNITED STATES DISTRICT COURT**
**FOR DISTRICT COURT OF KANSAS**

John Doe,

Plaintiff,

v.

Kansas State University,

Defendant.

CASE NUMBER: 2:20-CV-2258

**Complaint**

## **COMPLAINT, INCARCERATION DEMAND, AND JURY DEMAND**

The Plaintiff John Doe as *pro se*, alleges the following as his Complaint against Kansas State University("K-State"):

### **INTRODUCTION**

1. This is a civil rights case involving criminal in nature brought by a K-State student John Doe, who was conspired, discriminated, threatened, defamed, retaliated, harassed, and abused by multiple "K-State officials" i.e. Heather Reed, Scott Jones, Andrew Thompson, Eric Neilson, Nicholas Lander, Patrick J. Bosco, so forth.

2. John Doe immediately served 'Cease and Desist' notice to these respective K-State officials, resulted in an utter conspiracy, defamation, and retaliation, constituting a fabrication of complaints, and retaliation against the Plaintiff.

3. To this day, and despite months of continued pleading and requests from John Doe to these K-State officials, John Doe is left to languish on fear for safety, life, and career and under constant risk of encountering these 'K-State officials' unpunished, perhaps emboldened, criminal-assailants.

4.  To this day, K-State Officials engaged in multiple criminal activities against the Plaintiff. Furthermore, K-State has a habitual pattern of fostering institutional racism, conspiracy, misrepresentation of facts, altering the reality, retaliation and violence against their actual 'victim', like Plaintiff, and the person of color.

5.  K-State has a firsthand knowledge of the dangers of these violent miscreants i.e. 'K-State officials'.

6.  Plaintiff brings this action to vindicate his statutory rights to equal educational opportunities, equal protection civil rights protection, rights that K-State has violated and will continue to violate absent relief from this Court.

## JURISDICTION

7.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because this litigation involves matters of federal law including claims made under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S. C. § 1681 *et. seq.*

8.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.  K-State is located in Kansas, and the relevant facts occurred in Kansas, so venue in this Court is proper under 28 U.S.C. § 1391(b).

10. Defendant, K-State, is a state institution as defined by K.S.A. § 75-6102(a) and is subject to liability under the Kansas Tort Claims Act.

**PARTIES**

11. Plaintiff, John Doe, is a citizen and resident of the State of Kansas, and at all times relevant to the illicit misconduct by Defendant while he was a student at K-State, and a resident of KS.

12. Defendant, K-State, is a public institution of higher education located in Manhattan, Kansas, and is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a).

**FACTS**

**I.    K-State Officials Conspired, Retaliated, Discriminated, And Harassed Against The Plaintiff Severely Damaged John Doe**

13. Plaintiff was a student at K-State from the Fall of 2010- Fall of 2012.

14. From the Fall of 2010, Plaintiff was a student at K-State University, lived at Rm#258 Marlatt Hall, where Andrew Thompson was the RLC (*Resident Life Co-Ordinator*) of Marlatt Hall.

15. Intentionally, Andrew Thompson put the Plaintiff with some of the worst residents as his roommates, despite the fact Plaintiff asked and made multiple/direct requests to Andrew Thompson from the Fall of 2010 semester for a better roommate.

16. Since the Fall of 2010, many international students, minorities, and ethnic backgrounds were harassed, discriminated, threatened, and wrongfully evicted by Andrew Thompson. Andrew Thompson fostered institutional racism against these respective minorities.

17. In the Fall of 2010, Spring of 2011 and the Summer of 2011, on multiple occasions the Plaintiff was harassed, retaliated, and conspired by Andrew Thompson. In contrast, numerous times, the Plaintiff applied for DA (Desk Assistant) and RA (Residential

Assistant) job with the Marlatt Hall, which was wrongfully denied/terminated by Andrew Thompson.

18. In the Fall of 2011, Plaintiff was coerced to meet Andrew Thompson at his office (*First floor of Marlatt Hall*), and Plaintiff stated that Andrew Thompson needs to stop harassing, retaliating, and conspiring against the Plaintiff, putting Plaintiff with bad roommates, as well as wrongfully denying the Plaintiff's employment application. In response, Andrew Thompson threatened and menaced that Plaintiff will suffer retribution from himself, Nicholas Lander, Scott Jones, Eric Neilson, Heather Reed, and Patrick J. Bosco.

19. As a result, the Plaintiff had to seek therapy resulting from such hostile attacks from the K-State officials.

## II. Retaliation, and Conspiracy against the Plaintiff.

20. In the Fall of 2011, Plaintiff was enrolled in an English writing course with the K-State, where the classmate name Hannah Hovis (*Sorority of Beta Upsilon chapter of K-State*) offered to help Plaintiff with the English paper. Plaintiff went to a MACURH (Midwest Affiliate of College and University Residence Halls) conference, supported by Christina Hurtado. Upon return from the MACURH conference, Plaintiff went to see Hannah Hovis w.r.t help with the Plaintiff's paper.

21. For no reason, on 011/05/2011, the Plaintiff was shunned by Hannah Hovis, while dropping off a folder of English paper with Hannah Hovis, as instructed by her. Hannah Hovis happen to drop off Plaintiff's folder with Keleigh Rickman a/k/a Keleigh Schettler (*DA of Marlatt Hall*). Andrew Thompson used such an opportune moment to fuel the

situation, and he called the K-State campus cop on behalf of Hannah Hovis against the Plaintiff. Plaintiff was instructed by the K-State campus cop not to contact Hannah Hovis again, which Plaintiff complied with.

22. Later, Plaintiff shared such interaction and experience of Hannah Hovis with Andrew Woolley, a cohort and a fellow resident of Marlatt Hall. Andrew Woolley was a part of the Delta Chi fraternity of K-State, and he often saw and witnessed Hannah Hovis being a party girl(sorority) and a troublemaker. Plaintiff was instructed by Andrew Woolley to file a complaint with K-State attorney general name Dylan Works. Plaintiff took such advice and chose to lodge a complaint with Dylan Works about a false complaint filed by Hannah Hovis against the Plaintiff aided and fueled by Andrew Thompson.

23. Instructed and guided by Heather Reed to Dylan Works, Plaintiff was forced, and restricted to file and/or bring a formal complaint against Hannah Hovis.

24. Plaintiff was wrongfully moved to a different English class by Heather Reed. A new English course was instructed by Shaun Baker. Later, as instructed and conspired by Heather Reed, Plaintiff was given a bad grade to this course, as a form of retaliation by Heather Reed.

25. Plaintiff was depressed and suffered an emotional downturn, which led to ineffectively participate in the Fall of 2011 courses. In the meantime, Heather Reed, Andrew Thompson, and Scott Jones instructed the Plaintiff's course instructor (Shaun Baker) for the Fall of 2011 to give him a bad grade. As such, in the Fall of 2011, Plaintiff's grade dropped from A to C. This amounted to an intimidating, hostile, or offensive educational environment which unreasonably interfered with the academic performance and participation in his education, threatening his academic and career opportunities.

26. In the Spring of 2012, in fear of retribution and retaliation, Plaintiff hand served 'Cease and Desist' notice to Heather Reed, Andrew Thompson, Scott Jones, Dylan Works, Nicholas Lander, and Eric Neilson.

27. In the Spring of 2012, Plaintiff was wrongfully stripped and removed from being a 'president' of the Hall Governing Board (HGB) of Marlatt Hall. Instead, Dillion E. Veera was appointed as a 'president' of HGB. Dillion E. Veera was a big supporter and admirer of Andrew Thompson.

28. In Spring of 2012, in the middle of final's week, Plaintiff was wrongfully moved by Andrew Thompson with Dillion E. Veera as a new roommate at Marlatt Hall, here Andrew Thompson coerced Plaintiff and forced him to sign papers to move in with Dillion E. Veera, instead of being an Ian Ehrlich's roommate at the fifth floor of Marlatt Hall. Upon moving into this new room, while being a new roommate of Dillion E. Veera, the Plaintiff realized that he [Dillion E. Veera] had an 'arrest warrant for theft' (Ticket#695634) from the state of Texas.

29. Instructed/guided by Andrew Thompson, Dillion E. Veera threw Plaintiff's stuff on the floor, threatened Plaintiff, and posted an intimidating note outside the door. It brought absolute anxiety and stress upon Plaintiff's shoulder, consequently, Plaintiff was wrongfully evicted and forced to move out of Marlatt Hall, and he moved into Goodnow Hall with Caleb being a new roommate.

30. In the Spring of 2012, as a form of personal vendetta, conspiracy, and retaliation by Heather Reed, Andrew Thompson, Scott Jones, Nicholas Lander, Dylan Works, and Pat J Bosco, K-State SGA held/initiated a hearing with a fabricated and false complaint typed out by Dylan Works. Such hearing was administered by Scott Jones, and Heather Reed,

and ran by Dylan Works. At the end of the hearing, Plaintiff was wrongfully punished
with 'suspension,' which the Plaintiff appealed. Plaintiff 'WON' the appeal of the
'Suspension' and stayed as a student for the remainder of the semester. Throughout this
sham and in the midst of a fabricated proceeding, K-State SGA By-laws were
mysteriously changed by Heather Reed, Andrew Thompson, Dylan Works, Scott Jones,
Nicholas Lander, and Patrick J. Bosco, without having to go through a proper process to
get it changed to wrongfully influence the kangaroo court and the sham proceedings
against the Plaintiff.

31. Plaintiff learnt from the respective residents of Marlatt Hall that Andrew Thompson
instructed the Residential Assistants("RA"), Desk Assistants("DA"), and the Kramer
Dinning Hall to restrict Plaintiff from using such facilities, although Plaintiff paid for the
'Housing and Dining' services. Furthermore, Andrew Thompson, sent conspiratory
emails with Plaintiff's picture, inciting hostile violence against the Plaintiff.

32. In the Summer of 2012, as a retaliation by the K-State officials, Plaintiff's application for
Jardine Apartment was denied with having a place to stay at Jardine Apartment by
himself. Heather Reed and Nicholas Lander coordinated such calculated vendetta and
pre-mediated attacks against the Plaintiff while instructing Eric Neilson, a Resident Life
Co-Ordinator ("RLC") of Jardine Apartment to deny Plaintiff to stay there.
Consequently, Plaintiff was wrongfully evicted from the Goodnow Hall and forced to
stay at off-campus i.e. 1517 Hartford Rd., Manhattan, KS-66502.

33. On the 1st of July, 2012, due to the continued pattern of racism, pervasive attacks, and
hatred ness geared towards the Plaintiff, the Plaintiff was forced to change his religion
from Hinduism to Christianity.

34. During the summer of 2012, Plaintiff reached out to Patrick J. Bosco (Provost of K-State) to file a formal complaint against Heather Reed, Andrew Thompson, Eric Neilson, Nicholas Lander, and Scott Jones, as well as to discuss the nature of this sham, continued attacks, vendetta, and conspiracy against the Plaintiff by using student and his friend against the Plaintiff.

35. Patrick J Bosco verbally threatened Plaintiff that there would be two complaints against the Plaintiff, and he will be expelled by the end of Fall of 2012 semester. Patrick J Bosco showed his intentions by threatening the Plaintiff with his pen scribbling on a piece of paper, marking two bold lines. Plaintiff was a bit threatened and afraid by the whole interaction and left the place immediately.

36. Plaintiff learned from his friends of Marlatt Hall that Andrew Thompson instructed the every RA's and DA's of Marlatt hall to find anything and fabricate false allegation against the Plaintiff, as instructed by Nicholas Lander, Scott Jones, and Heather Reed.

37. On summer of 2012, Plaintiff's friend Laura Tharman invited Plaintiff to go on a social event, where Laura Tharman and Plaintiff went to Wendy's to get an ice-cream and French fries together. Laura Tharman was bit excited when she got back home (Marlatt Hall) and shared her delightful experience with her roommate Natalie Jayne (RA of Marlatt Hall). Natalie Jayne shared such formal outing with Andrew Thompson. Again, Andrew Thompson, used such opportune moment to twist the scenario of Plaintiff's interaction with Laura Tharman.

38. In the Fall of 2012, as a form of retaliation and retribution, Plaintiff's employment with the Salsaritas and Physics department was terminated by Heather Reed, and Scott Jones, in order to financially deprive the Plaintiff.

39. In Fall of 2012, Andrew Thompson coerced Plaintiff's friend Laura Tharman, and almost after 90 days passed[1], K-State SGA official, i.e., Dylan Works, made a false complaint stating that the Plaintiff kidnapped Laura Tharman, written by Dylan Works, with no police report.

40. Plaintiff witnessed that throughout the SGA hearing set forth by some teenagers, where Heather Reed and Scott Jones kept changing the by-laws in the middle of proceedings, to make their vendetta and case against the Plaintiff.

41. Plaintiff tried open door policy to reach out to the K-State president i.e., Kirk Schulz, although Heather Reed, Pat J. Bosco, and Scott Jones restricted Plaintiff of seeing Kirk Schulz. Furthermore, Plaintiff was harassed at his off-campus residence at 1517 Hartford Rd., Manhattan, KS-66502. Plaintiff was deprived of his rights afforded as a student.

42. On 16th of Nov. 2012, K-State SGA held a hearing against the Plaintiff, the Plaintiff had his friend Robert Stewart, and William Stewart as a support member, appeared in such hearing. Scott Jones and Dylan Works started a tantrum in the midst of a hearing and threatened Plaintiff, and his friend. Dylan Works and Scott Jones called the campus cop to intimidate Plaintiff and his friend, as they were advocating on behalf of the Plaintiff. Upon arrival, Ofc. Oscar Ruiz (Campus cop) stated to Plaintiff that these folks are bad people in reference to Scott Jones, and Dylan Works. Ofc. Oscar Ruiz didn't do anything and let the Plaintiff's friend and Plaintiff go. Dylan Works verbally threatened Plaintiff that there would be another hearing about this matter. Dylan Works mocked and made fun of the Plaintiff that he had his birthday the same day, and his relative wished him at that time.

43. On late Fall of 2012, Plaintiff was coerced to come to Anderson Hall, and under duress, coerced and forced to sign some documents by Roberto Malenado-Franzen, as she was instructed by Heather Reed, Scott Jones, Andrew Thompson, Nicholas Lander, and Patrick J. Bosco. Plaintiff had no clue of what he signed and/or that the documents even meant.

44. On late Fall of 2012, Plaintiff's attorney, i.e., Jonathan Snyder, faced with a hostile retaliation from Heather Reed, Scott Jones, Nicholas Lander, and Patrick J. Bosco for having to advocate Plaintiff's matter.

45. In the Fall of 2012, Plaintiff was wrongfully expelled with the false allegation that the Plaintiff kidnapped Laura Tharman. Plaintiff appealed that decision, and the K-State never made a final decision on expulsion.

46. Plaintiff and his attorney Jonathan Snyder met Scott Jones, Scott Jones crumbled and crushed Plaintiff's and Jonathan Snyder's hand.

47. In the Fall of 2012, Plaintiff applied to Purdue University, and Purdue University made an egregious response, stating that Scott Jones illegally reached out to Purdue University without seeking Plaintiff's written 'consent of disclosure' while violating Plaintiff's FERPA and Title IX Privacy rights. Scott Jones made some defamatory and disparaging comments about Plaintiff which has no truth to it.

48. In the early Spring of 2013, Plaintiff learned that Heather Reed orchestrated and led the Federal Agent[3] to talk to Medhat Morcos, Glenn Horton-Smith, and other individuals. First, Heather Reed lied and made multiple slanderous and libelous statements under oath to a Federal agent[3], and she asked Medhat Morcos, Glenn Horton-Smith, others to make a defamatory statement with no truth to it. Heather Reed lied under oath, and coerced other

individuals [2] to lie in order to tailor and manifests, Heather Reed's false statement against the Plaintiff.

49. In the early Spring of 2013, Sarah Katherine Mountcastle (friend of Laura Tharman) met the Plaintiff and stated that Laura Tharman seeks an apology and forgiveness for what she has done against the Plaintiff. Furthermore, Laura Tharman crying for the past several days, as she wasn't settled with the fact that she did such a horrible thing against the Plaintiff. Sarah Katherine Mountcastle stated that it was Andrew Thompson who coerced Laura Tharman to lie against the Plaintiff during the K-State SGA hearing, against her wishes. In the Fall of 2012, Laura Tharman was forced to come to the K-State SGA hearing, and lie against the Plaintiff as a matter to expel Plaintiff from the K-State.

50. Since the early Fall of 2011, K-State officials, i.e., Heather Reed, Scott Jones, Andrew Thompson, Eric Neilson, Patrick J. Bosco, and Nicholas Lander, conspired and retaliated against the Plaintiff.

### III. A.  Harassed, Stalked, And Conspired Against the Plaintiff During Military Service.

51. Since the early Fall of 2012, Heather Reed, Scott Jones, Dylan Works, Eric Neilson, and Patrick J. Bosco, wrongfully reached out to Plaintiff's unit, while stalking him via Facebook, and by using Plaintiff's friends, and K-State instructor like Ellen Bailey(*instructor of K-State*), Laura Phillips-Zee(*instructor of K-State*), and Jim Badders(*Assistant Director Division of Financial Services*).

52. In the early fall of 2013, Plaintiff was forced to change his name due to pervasive attacks, and racism endured from K-State officials since 2010. So far, Plaintiff was forced to

change his religion and name, due to pervasive attacks, retaliation, racism, discrimination, harassment, and conspiracy against the Plaintiff.

53. On 10/04/2013, Plaintiff again reached out to the K-State SGA member and Tribunal board administered by Heather Reed, Andrew Thompson, Patrick J. Bosco, and Scott Jones, seeking information about the Plaintiff's appeal w.r.t the K-State not rendering a final decision of wrongfully expelling him on 2012.

54. On 12/24/2013, again Plaintiff reached out to the K-State SGA member and Tribunal board requesting the same information, which the Tribunal board didn't respond.

55. K-State officials used Plaintiff's friends, i.e., James Rittenberger, Justin Syrios, Sarah Katherine Mountcastle, Tyler Dill, Adam Heil, Matthew Shoger, Shane Singleton, so forth to stalk the Plaintiff, gather information, and conspire against the Plaintiff.

56. In the Fall of 2013 and Spring of 2014, the K-State officials reached out to the Plaintiff's unit, while sharing false information about Plaintiff to hurt his Active Duty career with the Military.

57. On 02/17/2014, Plaintiff met Andrew Woolley at Olive Garden located in Manhattan, KS. Where Andrew Woolley deliberately stated that it was K-State officials i.e. Heather Reed, Scott Jones, Andrew Thompson, Eric Neilson, Nicholas Lander, and Patrick J. Bosco, who conspired and retaliated against the Plaintiff. Plaintiff should address such matters, and he should go after them legally.

58. In the Spring of 2014, due to a prolonged period/exposure of harassment, retaliation, retribution, and conspiracy against the Plaintiff, and the trauma received from the officials of K-State, which led to a diagnosis of mental disability by the Veterans Affair Medical Center.

**III. B. Shared False Information To University Of Kansas & Engaged In A Illicit Conduct Against the Plaintiff.**

59. In the Spring of 2014, Plaintiff's friend Bradley Fulk stated that Plaintiff needs to see a therapist based on the kind of traumatic experience he had been dealing with the professional miscreants of K-State, i.e., Scott Jones, Heather Reed, Nicholas Lander, Eric Neilson, Andrew Thompson, and Patrick J. Bosco.

60. In the summer of 2014, Plaintiff started at the University of Kansas.

61. In the summer of 2014, Plaintiff applied for the Public Safety Office job with the University of Kansas.

62. In the Summer of 2014, mysteriously, Kathy McCurley (*Assistant of KU Chancellor*) reached out to the Plaintiff outside the Hashinger Hall, while Plaintiff is on his way to moving into an on-campus apartment (Jayhawk Tower Apartment). Here Kathy McCurley quite frequently coerced Plaintiff to attend the 'Called to Greatness' (*Christian Ministry*)(*strong presence and affiliation with the K-State*) and coerced him to see John McDermott(*has a strong affiliation with Heather Reed*)(*his daughter Sarah McDermott was a SGA president*)("*Pastor" of Morning Star Church)(Oversees Belmont Church of Manhattan, KS)* .

63. Kathy McCurley and the members of the local religious fanatics i.e. 'Called To Greatness' task was to stalk, conspire, fabricate, harass, and retaliate against the Plaintiff while meeting the agenda of K-State official's interests.

64. Plaintiff's employment with the KU-Public Safety Office was wrongfully terminated, although they gathered a substantial amount of personal documents. James Anguiano lied to Plaintiff and said that a lot of individuals forge their passports, as in an attempt to get personal documents from the Plaintiff. Plaintiff was quite confident that the K-State

officials were behind this of getting Plaintiff's personal information and documents without having a proper right to acquire as such.

65. In the Fall of 2014, Brevan Woydziak(*brother of Baillie Rose Woydziak(K-State SGA member*)(*Called to Greatness member*)) stalked Plaintiff to 'International House of Prayers'. Plaintiff was quite settled that it was K-State officials who were using all of these third parties to stalk, conspire, retaliate, and harass the Plaintiff and his well-beings.

66. In the Summer of 2014, Sara Katherine Mountcastle, through by relative Jonathan Brunson, invited Plaintiff to Sarah's residence (412 North Timberridge Circle, Wichita, KS-67230) to discuss the nature of Sarah lied to the Federal agent[3] under oath. Plaintiff has questions and wanted to ask why she willfully lied, and who forced her to lie them?

67. When the Plaintiff went to Wichita, KS, Plaintiff was under the impression of meeting Sarah Mountcastle; instead, she called the local cops. At this moment, the Plaintiff was quite settled that the whole thing was a sham and fabricated. Plaintiff asked the officer to talk to Sarah Mountcastle in the presence of those two officers.

68. Those two officers went to see Sarah Mountcastle asked her to talk to the Plaintiff, and she refused in a fear that the truth will come out, and that she willfully committed a crime and perjury.

69. Plaintiff left the place and went back to the KU campus. Later, Plaintiff was wrongfully served with a PFS (Protection of Stalking) order, wherein such petition, Plaintiff noticed multiple differences with handwritings and lies written to abuse the PFS order.

70. In the Fall of 2014, Plaintiff witnessed Sarah Mountcastle and her brother Michael Mountcastle stalking Plaintiff at KU campus nearby Anschutz library. Sarah Katherine

Mountcastle cyber stalking Plaintiff by sending following request to Plaintiff on twitter with fake profile name 'Christine Jones', and a fake Facebook profile name 'Sarah Kate.'

71. Since the summer of 2014, Plaintiff challenged the PFS for almost a year. During such a period of time, in the midst of court proceedings at the Sedgwick County Courthouse and front of a Judge, Plaintiff witnessed and experienced a hostile attack and threat towards the Plaintiff's attorney, i.e., Jessica Fiegel from Mark Mountcastle. Within the court premises, during court proceeding, Mark Mountcastle stormed and chased the Plaintiff's attorney in a quite threatening and hostile manner. Attorney Brian Carman had to step-in to stop such a physical threat. Mark Mountcastle verbally threatened to kill Plaintiff, of him exercising his rights to challenge the frivolous PFS order, in order to stop Plaintiff to question the nature of lies stated by Sarah Katherine Mountcastle, influenced by K-State officials. It was an apprehension conduct, which the Sedgwick county court officer failed to arrest him.

72. In the Spring of 2015, the Plaintiff got this frivolous PFS dismissed, where Sarah Katherine Mountcastle lied more than twice on court documents and made perjurious statements to the court to abuse the order of protection, constituting incarceration.

73. Plaintiff was convinced and learned that it was K-State officials who were behind such conspiratory hostile attacks against the Plaintiff, as Michael Mountcastle was given a full-ride scholarship to attend the K-State.

74. In summer of 2014, the Plaintiff's car was vandalized by a residential assistant of Jayhawk Tower name Sophie Wang(*resident of Manhattan, KS*), she was directed by Joe Kelley( *In charge of Jayhawk Towers*), and influenced by K-State officials, it was a deliberate 'hit and run' crime against the Plaintiff to inflict severe damages upon the

Plaintiff, and to deprive him of transportation. The Police were involved and she was given a ticket, whereas the Plaintiff was restricted by Joe Kelley of him to bring the allegation of 'underage drunk driving', and 'hit and run' crime by Sophie Wang.

75. In the Fall of 2014, the Plaintiff had to drop all the classes from the University of Kansas due to a frivolous legal proceeding at the Sedgwick County courthouse. This amounted to an intimidating, hostile, or offensive educational environment which unreasonably interfered with the academic performance and participation in his education, threatening his academic and career opportunities.

76. Since the Summer of 2014, the Plaintiff was stalked and harassed by multiple members of 'called to greatness', i.e., Samuel Rosenak, Richard Lorenzo, Joshua Prescott, Wayne Simien(*raped multiple KU girls*), Henry Foster, Brett Hoffman, Cedric Clark, John McDermott, Jesse Brinson, so forth, serving the interests of K-State officials. Furthermore, multiple times these religious fanatics manipulated their conversation and tried to brainwash Plaintiff of forgiving the professional miscreants of K-State officials willfully conspired, retaliated, harassed, threatened, defamed, abused, and engaged in criminal conduct against the Plaintiff since 2010.

77. In the Fall of 2014, Plaintiff was wrongfully brought to the KU Student Affairs office by Lance Watson (*a classmate and a loyal friend of Andrew Thompson*) and Jennifer Wamelink. Plaintiff was barraged with some nonsensical question that the Plaintiff is a bit upset and angry about something; he needs to see a counselor. Plaintiff was quite settled and confident about the fact that it was K-State officials who are behind such an approach.

78. In the Spring of 2015, the Plaintiff's employment with the KU Physics and Astronomy Department was threatened by a KU Student Affairs employee, i.e., Lance Watson. Throughout the whole time, Plaintiff was stalked and harassed by Rick Rudnick (KU Housing and Dining)(*former K-State Housing and Dining employee and a friend of Heather Reed, Scott Jones, Andrew Thompson, so forth*), Lance Watson and Jennifer Wamelink of the KU Student Affairs office.

79. In Spring of 2015, Plaintiff was attending an event, where President Obama visited the KU campus. Plaintiff posted the picture of the President Obama, which resulted in an utter threats and retribution from the religious fanatics of 'Called to Greatness, and K-State officials.

80. In the Fall of 2015, while Plaintiff was employed and working at the GE Aviation at a nearby Fort Riley. Plaintiff was stalked by the KU Student affairs employee, i.e., Lance Watson and Jennifer Wamelink, by sending bluff certified mail to Plaintiff's old address.

81. In late Fall of 2015, Plaintiff was concerned and threatened due to the fact that the K-State employees were threatening Plaintiff's employment and wrongfully reached out to the Plaintiff's manager by using the local K-State students i.e. Josef Langr.

82. Plaintiff was living at a local house, housed by the GE Aviation employee in Manhattan, KS. Plaintiff was threatened and harassed by the K-State employee that the Plaintiff had to leave the Manhattan, KS residence, and moved to Jayhawk Tower for the remainder of the Fall of 2015 semester and commuted to work from Lawrence, KS to Manhattan, KS.

83. On 04/09/2016, against Plaintiff's wishes, he was coerced and wrongfully taken to 1326 Fremont St., Manhattan, KS by the 'Called to Greatness' members, i.e., Henry Foster and Lazaro Cardenas to see Jenny Loya, Aja Banner, and Baillie Rose Woydziak(*K-State*

*SGA member, and works for Heather Reed, Andrew Thompson, and Scott Jones).*
Plaintiff was a bit perplexed about the whole ordeal and the situation.

84. In the Spring of 2016, Plaintiff's employment with the KU Astronomy and Physics Department was wrongfully terminated by Lance Watson and Jennifer Wamelink as a matter to harm Plaintiff's employment and career. As a result, Plaintiff was financially deprived and aggrieved with such malicious actions against him.

85. In the summer of 2016, Plaintiff was stalked and harassed by the Called to Greatness members, while Plaintiff was working at Vandenberg Air Force Base (VAFB). Here K-State officials again stalked and conspired against the Plaintiff by using Tyler Dill (student of K-State) and reaching out to Plaintiff's workplace located in VAFB.

86. Plaintiff was so much harassed, stalked, and threatened that he had to move to a new job at Arizona, where he was employed with the Intel Corporation.

87. In the Fall of 2016, while Plaintiff was employed to Intel Corporation, on multiple occasions, Plaintiff received numerous messages via the third party of 'Called to Greatness', i.e., Baillie Rose Woydziak and her friends. Throughout the whole summer, Baillie Rose Woydziak was stalking Plaintiff's LinkedIn profile, social media, and it led Plaintiff to deactivate his LinkedIn profile, and social media account. Here Baillie Rose Woydziak and Called to Greatness was playing with Plaintiff's emotions and feelings, as a matter to fabricate a case against the Plaintiff, while aiding the interests of K-state officials.

88. In the Fall of 2016, Plaintiff saw a Facebook post by Jenny Loya, who earlier added Plaintiff to stalk him on behalf of Baillie Woydziak, stalk and share personal information to Heather Reed. Plaintiff saw a post by Jenny Loya about two girls name Tessa Farmer

and Sara Weckhorst(2:16-CV-02255-JAR-GEB)(**Exhibit A**) were raped under Heather Reed, Andrew Thompson's , Scott Jones's, Patrick J Bosco's, Eric Neilson's, Kirk Schulz's and Nicholas Lander's supervision. Furthermore, these two girls, along with the third girl who was raped, were threatened, harassed, conspired, and retaliated against pursuing a legal remedy against the K-State University. Plaintiff was compelled to support these two individuals by replying to a Facebook post on Jenny Loya's post that Plaintiff can assist these two individuals who were taken advantage of and conspired against by the same K-State officials.

89. Quite similar to Plaintiff's situation, Scott Jones retaliated and conspired against Sara Weckhorst and Tessa Farmer (Paragraph# 46 and #48, **Exhibit A**)

90. Plaintiff received one uncalled for, threatening message from Jim Badders (was a Facebook friend of Jenny Loya), where he lied about the nature of the fact of what Plaintiff posted his support for these two aggrieved students. His intentions were aligned and supported by Heather Reed, Scott Jones, so forth. Plaintiff asked him not to contact him again.

91. In the Fall of 2016, Plaintiff received a threatening phone call from Called to Greatness member, i.e., Richard Lorenzo, while Plaintiff was at work. Deliberately, Richard Lorenzo said if the Plaintiff comes back to Lawrence, KS then he will go through a retribution, and there will be consequences and price which Plaintiff will have to pay for it. Plaintiff took this as a verbal threat.

92. In late Fall of 2016, Plaintiff was forced and coerced by the members of 'Called to Greatness' to see a local doctor name Hiten Soni to wipe out Plaintiff's memory about his whole trauma(PTSD, so forth), conspiracy, retaliation, retribution, and threats he has

entailed at K-State. Plaintiff refused, so Plaintiff got physically assaulted by Richard
Lorenzo.

93. In the Spring of 2017, in the middle of a semester, Plaintiff was wrongfully evicted by a
former K-State Housing and Dining employee name Rick Rudnick (*friend of Heather
Reed, Scott Jones, and Andrew Thompson*) from Jayhawk Tower. This eviction was quite
similar to the eviction from Marlatt Hall in the Spring of 2012.

94. Plaintiff was verbally and physically threatened by the Called to Greatness member, i.e.,
Joshua Prescott, Samuel Rosenak, Lazaro Cardenas, Jesse Brinson, so forth.

95. In the late Spring of 2017, Plaintiff was physically battered by a K-State affiliated
employee name Matthew Myers, while Plaintiff was coerced to come to this campus
ministry by Emma Tapko(*affiliated with the KU Student Affairs).* Plaintiff had to go to
the VAMC Topeka, KS, to seek treatment about such two incidents on two separate
occasions. Plaintiff received severe bruises and trauma from such a blunt force of direct
attacks against the Plaintiff.

96. In the Spring of 2017, Plaintiff had to reach out to the Lawrence Sheriff's department to
report these two specific hostile events against the Plaintiff by Richard Lorenzo and
Matthew Myers. Furthermore, Plaintiff had to seek treatment and therapy from a
provider.

97. In the late Spring of 2017, as a form of retaliation and conspiracy, Plaintiff received
multiple threats from Brevan Woydziak. Furthermore, Richard Lorenzo used Baillie
Woydziak, and Emma Tapko to fabricate a false stalking complaint on behalf of them
against the Plaintiff.

98. As a result, Plaintiff had to drop out of most of the courses he was enrolled in the Spring of 2017 semester at the University of Kansas.

99. In the Spring of 2017, Plaintiff's bike was stolen by the members of the Called to Greatness, Plaintiff's mail tampered, and later Plaintiff was wrongfully evicted from the Rockland Apartment.

100. Susan Hadl, affiliated with 'Justice Matters', 'K-State University', 'Called to Greatness', and 'Morning Star Church', showed up at Plaintiff's door, while banging the door outside, and threatened Plaintiff, and the neighborhood. She wrongfully entered Plaintiff's house to steal Plaintiff's documents, and took him against his wishes, and coerced him to sign documents, while serving the interests of K-State officials.

101. In the Summer of 2017, Plaintiff had to admit himself to the VA hospital, seeking treatment from the continued pattern of harassment, retaliation, and conspiracy against the Plaintiff, by the members of the K-State.

102. In the summer of 2017, Plaintiff had to drop out of all the summer courses at the University of Kansas. This amounted to an intimidating, hostile, or offensive educational environment which unreasonably interfered with the academic performance and participation in his education, threatening his academic and career opportunities.

103. In the summer of 2017, the hostile members of the 'Called to Greatness' reached out to Plaintiff's employer, i.e., 'Northrop Grumman,' to jeopardize the Plaintiff's offer for employment in the summer of 2018.

104. Furthermore, Plaintiff dealt hostile retribution and retaliation from the Called to Greatness members for supporting a democratic caucus of a running member, i.e., Bernie Sanders.

105. In the Spring of 2017, Plaintiff was coerced to attend the 'Justice Matters' ran by the Called to Greatness, where the members of the 'Justice Matters' enticed and fostered hostile behavior towards a running mate named Nancy Thellman (*running for 2nd district of Lawrence, KS*) against Jesse Brinson(Called To Greatness member).

106. On summer of 2017, Plaintiff's medical files with the VA were compromised, due to unauthorized access, as well as his HIPAA Privacy Rights were violated by the members of the 'Called To Greatness' i.e. Susan Hadl, resulted in flagging and making it confidential of Plaintiff's medical records, by the Privacy Compliance Officer.

107. On 04/07/2017, Plaintiff was physically threatened by Brevan Woydziak near the International House of Prayer, which resulted in the Kansas City Police Department's involvement. Later, Plaintiff reached out to the Fort Riley, military Police department to lodge a formal complaint against Brevan Woydziak.

108. In the summer of 2017, KU Student Affairs conducted a sham hearing, where multiple members from the K-State were used against the Plaintiff, as a form of conspiracy. Plaintiff witnessed Lance Watson was fueling such fabricated hearing against the Plaintiff. This hearing was conducted quite similar to the hearing conducted on Fall of 2012 at K-State.

109. In late Fall of 2017, as a retaliation KU Student Affairs, i.e., Lance Watson, rendered a wrongful decision of expulsion from the University of Kansas. Again, Plaintiff was denied with an appeal and a hearing. Here K-State officials motives was to justify their wrongful expulsion on Fall of 2012, by affirming an another false expulsion against the Plaintiff, by using the third party. In contrast to using a female against a male, here, corrupt KU Officials serving the K-State official's interests followed an exact pattern of

hateful fabricated complaint against the Plaintiff, where the fabricated accuser wasn't given a standard polygraph test to verify the truth to it. Also, quite similar to K-State's scenario, here, KU officials willfully engaged in philogyny, created a hostile environment, and utter racism against the Plaintiff.

### III.C. Shared False Information To Cornell University And Engaged In A Illicit Conduct Against The Plaintiff

110. In the Fall of 2017, Plaintiff witnessed a Called to Greatness member and affiliated to K-State, i.e., Cedric Lemanuel Clark, at a nearby Duffield atrium stalking the Plaintiff.

111. In the Spring of 2018, quite similar to the Spring of 2017, and the Spring of 2012, Plaintiff was wrongfully evicted from the dorm.

112. In early Spring of 2018, Heather Reed, and Scott Jones slandered/defamed against the Plaintiff and made libelous statements against the Plaintiff to Cornell Officials. Heather Reed and Scott Jones furnished an altered K-State transcript to the officials of Cornell University.

113. On or about June 13, 2018, K-State official Heather Reed, in her capacity as an employee of Defendant KSU did publish a false statement to an employee of the Cornell University that was false and defamatory to Plaintiff.

114. Heather Reed and Scott Jones knew that the information conveyed to other university was false and defamatory and/or the Defendants were negligent in failing to ascertain the truth of the statements made.

115. As a result of the false and defamatory communications by Defendants, Plaintiff was damaged by the information's negative impact on his status at other university, negative

impact on his reputation, negative impact on his ability to complete his education, and substantially interfered with his ability to make a living in the future.

116. The Plaintiff has sustained damaged to his reputation by K-State officials malicious actions and incurred special damages while attempting to repair the reputation damage done by the spread of false information.

117. The Defendants have engaged in a continued long pattern of defamatory and conspiratory conduct against the Plaintiff since 2010.

118. Summer of 2018, Plaintiff made a formal request with regards to a complete copy of the Plaintiff's student records be sent to Plaintiff, and Plaintiff's attorney i.e. Casey Johnson, Matthew Donnelly, and Robert Wilhelmus. Here K-State official didn't send any records to Plaintiff's attorney. Although, Heather Reed and Scott Jones sent requested partial documents to Plaintiff, where Heather Reed and Scott Jones concealed documents, altered documents, and typed up new information to alter the history and mislead the Plaintiff's student record. K-State officials intentionally didn't provide a digital copy of the fabricated SGA hearing conducted in the Spring of 2012 and Fall of 2012.

119. K-State officials, i.e., Heather Reed, Scott Jones, Andrew Thompson, Patrick J. Bosco, and Nicholas Lander willfully violated 'Cease and Desist' notice, Plaintiff's FERPA and Title IX privacy rights, furthermore willfully participated conspiracy against the Plaintiff.

120. On December 27, 2018, instructed by K-State officials, Brevan Woydziak enticed and engaged in hostile violence against the Plaintiff by posting an Instagram post asking his followers to harass the Plaintiff and attack him.

121. Despite the fact of serving multiple 'Cease and Desist' notice since the early Fall of 2016 to the respective members of 'Called to Greatness,' On early Spring of 2019, the plaintiff

had to serve 'Cease and Desist' letter again to multiple individuals of 'Called to Greatness,' i.e., Richard Lorenzo, Joshua Prescott, Samuel Rosenak, Wayne Simien, so forth.

### IV. KJRA KSA 77

122. As a result of the 'arbitrary and capricious' conduct, false and defamatory communications by Defendant, Plaintiff was damaged by the information, negative impact on his status at other universities, negative impact on his reputation, negative impact on his ability to complete his education, and substantially interfered with his ability to make a living in the future.

123. On Spring of 2018, Plaintiff sought a restraining order against an official affiliated with the K-State.

124. In early Fall of 2018, Plaintiff, with the assistance of his local counsel, reached out to the K-State, requesting the altered information, notation on the transcript, as well as the disciplinary record, be purged, as it is fabricated. Also requesting a 'Cease and Desist' of illegal conduct by the K-State official, reversal of the decision w.r.t the appeal made by the Plaintiff since the early Fall of 2012, where K-State failed to address such issues with the Plaintiff, and the final decision wasn't rendered w.r.t the frivolous 'expulsion' against the Plaintiff. Again, throughout the time, Heather Reed, Andrew Thompson, Nicholas Lander, Patrick J. Bosco, and Scott Jones kept changing the K-State policies in the midst of a Plaintiff's request for records. Here incahoots and professional miscreants of K-State acted in deceitful, malicious actions against the Plaintiff to deprive him of access to student records, and a fair process.

125. On 12/10/2018, Plaintiff participated in a hearing via telephone with his local counsel w.r.t violation of Plaintiff's FERPA Privacy Rights, although Plaintiff's counsel was forced not to participate or say anything on behalf of the Plaintiff. In this sham hearing, mysteriously, Heather Reed joined without letting the Plaintiff be aware of it. Although, when Plaintiff questions the other individual, where Heather Reed acknowledged herself being the other member in such hearing.

126. Since 2011, Fall of 2018, and Early 2019, Plaintiff served 'Cease and Desist' notice to multiple officials of K-State i.e. Heather Reed, Scott Jones, Andrew Thompson, Nicholas Lander, so forth.

127. On 01/22/2019, Plaintiff pursued a KSA 77 at a local Riley County Courthouse, with his local counsel about Plaintiff's FERPA and Title IX Privacy rights violation of a pending matter from 2012.

128. In the third week of April, Plaintiff learned that such a case was wrongfully dismissed, where the proper court procedure weren't followed, furthermore Richard Seaton, Peter Rombold, and John F. Bosch engaged in an illicit conduct, which is criminal in nature, requiring a permanent disbarment of such individuals.

129. On third week of May, Plaintiff moved to challenge such improper dismissal.

## CAUSES OF ACTION

130. Plaintiff hereby incorporates all of the preceding paragraphs into this causes of action as reference below.

### FIRST CAUSE OF ACTION

131. Illegal discrimination, conspiracy, harassment, retaliation, in education, housing, and career, based upon Plaintiff's gender, race, color, religion, national origin, disability, veteran status, ethnicity, so forth.

## SECOND CAUSE OF ACTION

132. Retaliation for exercising Plaintiff's Constitutional rights.

## THIRD CAUSE OF ACTION

133. Failure to provide a due process.

## FOURTH CAUSE OF ACTION

134. Violation of Title IX i.e. 20. U.S.C § 1681 *et seq*.

## FIFTH CAUSE OF ACTION

135. Violation of Kansas Consumer Protection Act("KCPA").

## SIXTH CAUSE OF ACTION

136. Violation of 42. U.S.C § 1985.

## SEVENTH CAUSE OF ACTION

137. Violation of 42. U.S.C § 1983.

## EIGHT CAUSE OF ACTION

138. Violation of 20 U.S.C § 1232g.

## NINTH CAUSE OF ACTION

139. Violation of 18 U.S.C §§ 1621 and 1623.

## TENTH CAUSE OF ACTION

140. Breach of fiduciary duty.

## ELEVENTH CAUSE OF ACTION

141. Negligent and intentional infliction of Emotional distress.

### TWELFTH CAUSE OF ACTION

142. Contributed to, and exasperated Plaintiff's disabilities.

### THIRTEENTH CAUSE OF ACTION

143. Violation of Title VIII laws i.e. 7 C.F.R. § 1901.203 *et seq.*

### FOURTEENTH CAUSE OF ACTION

144. Violation of Title VII.

### FIFTEENTH CAUSE OF ACTION

145. Violation of 18 USC § 1001 *et seq.*

### SIXTEENTH CAUSE OF ACTION

146. Violation of multiple state and federal laws.


### CONCLUSION/PRAYER FOR RELIEF

#### Request/Relief

**WHEREFORE,** the Plaintiff requests that this Court to award him:

147. Remove derogatory notation made on the K-State transcript, 'retroactively' withdraw

classes taken at the K-State in the Fall of 2010, Fall of 2011, and classes where Plaintiff

was given bad grades, influenced by Heather Reed.

148. For amendment of Plaintiff DOE's student records.

   a) Fall 2010 semester as being seen as no-credit was earned. It should be marked

   as "Withdraw" status which is applicable w.r.t Plaintiff's given extenuating

   scenario/circumstances caused/orchestrated by the K-State officials.

   b) Regarding Spring 2011 semester, Plaintiff wants all the DAS courses

   being redacted from the Fall of 2010 semester, and given "Withdraw" status to

MATH 222, due to an extenuating circumstances caused/orchestrated by the K-State officials.

c) Regarding the Summer of 2011 semester, Plaintiff wants the MATH 240 being granted as "Withdraw" status due to extenuating circumstances.

d) Regarding Fall of 2011 Semester, Plaintiff wants a "Withdraw" status for all the courses due to Extenuating Circumstances caused/orchestrated by the K-State officials.

e) Regarding Fall of 2012 Semester, Plaintiff wants a "Withdraw" status for ECE 211, and PHYS 214 due to Extenuating Circumstances caused/orchestrated by the K-State officials.

149. Compensate attorney fees, and respective damages since the Fall of 2011.

150. Remove from holding employment position and all the employment benefits afforded to Heather Reed, Nicholas Lander, Andrew Thompson, Patrick J Bosco, Scott Jones, and the respective involved members of K-State, enjoying since the Fall of 2011.

151. Investigate any wrongdoings, illicit conduct, and misconduct by Heather Reed, Nicholas Lander, Andrew Thompson, Patrick J Bosco, Scott Jones, and the respective involved members of K-State engaged against any other individuals since 1990.

152. Incarcerate Heather Reed, Nicholas Lander, Andrew Thompson, Dylan Works, Patrick J Bosco, Scott Jones, and the respective members without a parole, for conspiracy, inciting violence, and retaliation against the Plaintiff, since the early Fall of 2011.

153. Refer the part of the Plaintiff's complaint to FBI, and US Attorney's office for a criminal prosecution w.r.t every wrongdoing against the Plaintiff by the respective individuals listed above.

154. Issue a permanent protective order on behalf of Plaintiff against the K-State officials.

155. Restrict federal and state funding to the K-State University.

156. Compensate each and every damages caused to Plaintiff since the Fall of 2011.


## Damages

157. Damages in reference to attorney fees, 'declaratory-(*1. violation of 'Cease and desist'*

   *letter, etc.*), treble, quantum, statutory, nominal, liquidated, consequential, incidental,

   reliance, punitive, contemptuous, reconstitutionary/disgorgement, and special damages.

158. Compensatory and punitive damages due to retaliation, and conspiracy.

159. Declaratory damages due to violation of 'Cease and Desist' notice.

160. Trial w.r.t every asserted damage stated above, and trial w.r.t 'Conspiracy.'


## JURY DEMAND

161. Plaintiff demands a trial by a Jury.


## INCARCERATION DEMAND

162. Plaintiff demands mandatory incarceration of the respective K-State officials i.e., Heather

   Reed, Scott Jones, Andrew Thompson, Patrick J. Bosco, Nicholas Lander, Dylan Works,

   and Eric Neilson, and the respective third parties who are involved serving the interests of

   K-State officials, due to civil contempt, violation of 'Cease and Desist' notice, lying under

   oath to a Federal agent[3], conspiracy, retaliation, and criminal conduct against the Plaintiff,

   since 2010.

Dated: April 12, 2020

JOHN DOE
_____

John Doe
Unit#1179, 645 Vermont St.,
Lawrence, KS-66044.
Ph:(719)-287-8579

---

1. By K-State SGA laws (*the original version, without an alteration*) allowed only 30 days to bring a complaint.
2. Plaintiff's roommate, friends, instructors, so forth. K-State officials i.e. Heather Reed, Scott Jones, Andrew Thompson, Eric Neilson, Nicholas Lander, and Patrick j. Bosco engaged in a pattern of conspiracy, and retaliation against the Plaintiff since the early Fall of 2011. Directly and indirectly, K-State officials used the third parties to cause severe harm to the Plaintiff. Heather Reed made false statements under oath to a Federal Agent[3] with regards to a Security Clearance, and to affect the Plaintiff's career with the military. Heather Reed coerced, and orchestrated deceit scheme against the Plaintiff by using Plaintiff's friend i.e. James Rittenberger, Sarah Katherine Mountcastle, Justin Syrios, so forth, to lie against the Plaintiff, in order to justify the atrocity and conspiracy against the Plaintiff.